**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**


JOHN A. HELMSDERFER, ET. Al.,                    CASE NO. 1:06cv268

               Plaintiffs                        JUDGE MICHAEL R. BARRETT

        -vs-

BOBRICK WASHROOM EQUIPMENT, INC.
ET AL.,

               Defendant


**DECISION AND ORDER**

TABLE OF CONTENTS

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II. Patent at Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III. Background  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

IV. Methods to Determine Claim Construction  . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

V. Claims at Issue, Party Construction, and the Court's Construction  . . . . . . . . .  6

        A. Claims 6 and 7 (includes the independent Claim 1)  . . . . . . . . . . . . . . .  6

               1. "Partially Hidden From View" . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

               2. "Exposed for View" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

               3. "Abrasion-Resistant Material" . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

               4. "Covers the Exposed Bottom Surface" . . . . . . . . . . . . . . . . . . . . . 16

               7. "Vandalism Proof" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1

## I.  INTRODUCTION

This is a patent infringement case under 35 U.S.C. § 271 in which Plaintiffs John A. Helmsderfer and Brocar Products, Inc. ("Plaintiffs") bring a Complaint (Doc. 1) alleging that Defendants, Bobrick Washroom Equipment, Inc., BWA South Company, Inc., Target Sales and Marketing, LLC, and Patterson Case Associates, Inc.  ("Defendants") have infringed U.S. Patent No. 6,049,928 ("the '928 patent") owned solely by John A. Helmsderfer and exclusively licensed to Brocar Products.  This matter is before the Court for claim construction as required by *Markman v. Westview Investments*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).  The Parties filed a Joint Appendix ("JA") to Claim Construction Briefs (Doc. 27).  The Court held a *Markman* hearing on July 13, 2007, during which counsel for the parties presented arguments in support of their claim constructions.

## II.  PATENT AT ISSUE

The patent in suit for purposes of this action is US Patent No. 6,049,928.  The Patent is entitled "Baby Diaper Changing Station."  The inventor is John A. Helmsderfer and the Patent is dated January 27, 1998.  The '928 Patent is a divisional application from application No. 08/478,951, dated June 7, 1995, now the  5,802,647 Patent.

## III.  BACKGROUND

The patent-in-suit is exactly what it's title purports it to be.  It is a device designed to provide an area in a restroom for someone to change a baby's diapers.  The station is built as a convenient area for people who need to change a child's diaper, providing a platform on which to lay a baby down, but also has attributes that allow the table to fold up and out of the way when not in use.  There are additional functionalities to this Patent, of

greatest consequence in this action are panels to reduce the prevalence of vandalism and graffiti by making it impossible, or at least difficult, to tarnish the platform. The Patent's design provides a secondary benefit if a vandal succeeds in harming the platform. If damage should occur, one may replace less expensive panels rather than replacing entire sections of the device or the entire device.

Plaintiffs allege that Defendants infringe claims 6 and 7. These claims depend from claim 1 and therefore incorporate all of the limitations in claim 1. This also means that the Court must construe terms within claims 6, 7, and 1. In addition, claim 7 depends from both claims 1 and 6 and therefore incorporates all of the limitations of both of these claims.

Plaintiffs allege that all Defendants have infringed and continue to infringe because of their manufacture, sale, offer to sell, use, or import of stainless steel baby changing stations, including at least models KB110-SSRE and KB110-SSWM. (Doc. 3 at 3). Plaintiffs allege that the two models identified infringe the '928 Patent and that infringing activity will continue unless enjoined by this Court. *Id.* Plaintiffs allege that the infringement is willful and thus damages should be trebled per 35 U.S.C. § 284. *Id* at 4. Plaintiffs further argue that the case is exceptional and that they should be awarded reasonable attorney fees, per 35 U.S.C. § 285. *Id.* Finally, Plaintiffs request interest on any damages awarded and demand a trial by jury. *Id.*

Defendant Bobrick admits to having manufactured on its behalf and having sold and offered for sale stainless steel baby changing stations, including models KB110-SSRE and KB110-SSWM, but deny that Target, BWA and Patterson Case have sold or offered for sale these products. (Doc. 7 at 3-4). Defendants assert numerous affirmative defenses

3

including that the '928 Patent is invalid for failure to comply with patent statutes, non-infringement, prosecution history estoppel (which allegedly bars Plaintiffs from using the doctrine of equivalents), scope limitation derived from the history of the patent's prosecution, laches and estoppel, and reliance. *Id* at 4-5. Defendants are seeking a dismissal with prejudice, permanent injunction enjoining Plaintiffs from any further actions against Defendants in this matter, and reasonable attorney fees. *Id* at 5.

## IV. <u>METHODS TO DETERMINE CLAIM CONSTRUCTION</u>

The words of an asserted claim are looked to first and are to be given an ordinary meaning – unless a different meaning is clearly defined in the intrinsic record. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995); *Tate Access Floors, Inc. v. Maxcess Technologies, Inc.,* 222 F.3d 958, 965 (Fed. Cir. 2000); *Northern Telecom Limited v. Samsung Electronics Co., Ltd.*, 215 F.3d 1281, 1287 (Fed. Cir. 2000). "The meaning is that which would be understood by a person of ordinary skill in the art." *Markman,* 52 F.3d at 979.

The Courts first look to the language of the claims themselves. *Middleton, Inc. v. Minnesota Mining & Manufacturing Co.*, 311 F.3d 1384-87 (Fed Cir. 2002). "The words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005)(citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). In determining this meaning, courts look to the patent claims, the patent specification, the prosecution history and extrinsic evidence. *Phillips*, 415 F.3d at 1314-16. Plain terms are read in the light of the specification of which they are a part. *Markman*, 52 F.3d at 979. The context is within which the claim is written and the

4

context is ascertained from the intrinsic record.  *CCS Fitness v. Brunswick Corp.*, 288 F.3d 1359, 1366-67 (Fed. Cir. 2002).  When this intrinsic evidence provides an unambiguous description of the scope of the invention, reliance on extrinsic evidence is improper. *Vitronics Corp.*, 90 F.3d at 1582.  The Federal Circuit routinely looks to the background of the invention in Claim Construction.  *Bicon, Inc. v. Straumann Co.,* 441 F.3d 945, 951 (Fed Cir. 2006); *Boss Control, Inc. v. Bombardier, Inc.,* 401 F.3d 1372, 1377 (Fed. Cir. 2005); *Nellcor Puritan Bennett, Inc. v. Masimo Corp.*, 402 F. 3rd 1364, 1367-68 (Fed. Cir. 2005); *Astrazeneca AB v. Mutual Pharm. Co.,* 384 F.3d 1333, 1338-40 (Fed. Cir. 2004); *Crystal Semiconductor Corp. v. Tritech Microelectronics International, Inc.,* 246 F.3d 1336, 1348-49 (Fed. Cir. 2001); *Vehicular Technologies Corp. v. Titan Wheel International, Inc.,* 141 F.3d 1084, 1091-91 (Fed. Cir. 1998)*.*  The words of a claim must always be looked at in the context of the written description and the prosecution history.  *Medrad, Inc. v.MRI Devices Corp.*, 401 F. 3d 1313, 1319 (Fed. Cir. 2005).  Unless compelled otherwise, the Court will give a claim term the full range of its ordinary meaning.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005); *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n,* 383 F.3d 1352, 1364 (Fed. Cir. 2004).

The parties have agreed upon construction of several claim terms that were originally in dispute but still do not agree upon the construction of seven claim terms.

The disputed claim terms of the '928 Patent are: "partially hidden from view;" "exposed for view;" "abrasion resistant material;" "covers the exposed bottom surface;" "vandalism proof;" "surrounding;" and "configured to engage the platform and secure the panel to the platform."  "Because claim terms are normally used consistently throughout

the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Phillips v. AWH Corp.*, 413 F.3d 1303, 1314 (Fed. Cir. 2005). Defendants argue that the terms at issue are simple and straightforward and should be given their ordinary meanings. (Doc. 26 at 6). Defendants further contend that the ordinary meaning is easily ascertainable from the intrinsic evidence and comports with general usage dictionaries. *Id.* The flaw Defendants find with Plaintiffs' construction is that they are trying to re-write the claims, tailoring the terms to show infringement. *Id.* Plaintiffs argue that intrinsic evidence is paramount but extrinsic evidence, although generally seen as less reliable, may be used if ambiguity in terms cannot be resolved with the available intrinsic evidence. (Doc. 28-1 at 4-6).

## V. <u>CLAIMS AT ISSUE, PARTY CONSTRUCTION, AND COURT CONSTRUCTION</u>

### A. Claims 6 and 7 (includes the independent Claim 1 from which they depend)

**1.** A wall-mounted station for changing the diapers of a baby comprising:
a support platform having top and bottom surfaces and opposing sides, the support platform being hingedly fixable at one side with respect to a wall;
the support platform being movable between a closed position up against a wall wherein the platform top surface is **partially hidden from view** and the bottom surface is **exposed for view** and an opened position hinged away from a wall wherein the support platform is disposed generally perpendicular to a wall and the top surface is exposed for receiving a baby;
a generally flat protective panel, formed of a non-glass, **abrasion-resistant material**, the platform bottom surface being configured for receiving said panel such that said panel overlies at least a portion of the platform bottom surface and **covers the exposed bottom surface** of the platform when the support platform is in a closed position to create **vandalism proof** support platform for reducing the effects of graffiti and abrasions on the platform and for improving the inner decor of a facility in which the changing station is installed.

6

**6.** The baby changing station of claim 1 further comprising a protective cap structure **surrounding** the protective panel, the cap structure **configured to engage the platform and secure the panel to the platform**.

**7.** The baby changing station of claim 6 wherein the protective panel is integrally formed with the protective cap structure.

### 1. "Partially Hidden From View"

Defendants construe the claim term "partially hidden from view" as "incompletely or less than totally obscured from visual perception." (Doc. 26 at 7). Plaintiffs construe the claim term as "positioned so at least some of the top surface is blocked from being seen." (Doc. 28-1 at 8). The difference in construction between the two depends on what vantage point one looks at the amount of coverage from. Plaintiffs' perspective is viewed as something greater than zero coverage up to and including complete coverage while Defendants' observation is viewed from something less than complete coverage down to and including no coverage.

Defendants assert that the term is clear on its face and should be given its ordinary meaning. (Doc 26 at 7). Defendants further argue that Plaintiffs construction, which imports the clause "at least some," expands the claim to encompass something that was not claimed by the Patent. *Id* at 8. Defendants finally state that their interpretation is supported by ordinary parlance and that Plaintiffs could have chosen more accurate language, such as their offered "at least some," as they did in other areas of the Patent. *Id* at 9.

Plaintiffs counter that the specification language stating that the top surface is "generally hidden from view" supports their construction. (Doc. 28-1 at 8). Plaintiffs next conclusively state that because of the plain language of the claim as well as the plain

language of the specification, the term should mean "at least some." *Id.* In response to Defendants' construction, Plaintiffs make an unsupported leap to claim that partially is within the scope of completely and therefore "at least some" is consistent with the scope of the claim. (Doc. 30 at 2). Plaintiffs finally claim that Defendants' construction would exclude the preferred embodiment, which describes the top surface as being generally hidden from view. *Id* at 3. The Court disagrees.

As Defendants pointed out in their response to Plaintiffs' construction, Plaintiff/inventor Helmsderfer could have drafted the claims to say many things, but he did not. (Doc. 29-1 at 3). He chose the language contained in the claim and that is what the Court must construe. "In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose . . . ." *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003) (citing *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001)(citation omitted). "The terms used in the claims bear a presumption that they mean what they say and have the[ir] ordinary meaning . . . ." *Id.*

The Court's analysis starts with the claim language. The claim describes the platform's top surface as "partially" hidden from view, but does not elaborate or define what partially means. '928 Patent, col. 16, ll. 59-60. Claim terms are usually understood to carry their ordinary and customary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)(citing *Vitronics*, 90 F.3d at 1582). However, a patentee may assign a unique definition to a term that is different from customary meaning. *Id* at 1316 ("In such cases, the inventor's lexicography governs."). Since no clarity is gleaned by the claim

language or the context, and the patentee did not define the term otherwise, "partially" is presumed to carry its customary meaning.

Claims do not stand alone in a vacuum and the Court moves to the specification for claim scope clarification. *See Phillips* at 1315 ("The specification is . . . the primary basis for construing the claims."); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F. 3d 1576, 1582 (Fed. Cir. 1996) ("the specification is always highly relevant to the claim construction analysis."). Plaintiff is correct that the written description describes the top surface as "generally hidden from view." '928 Patent, col. 4, l. 51; *Id* at col. 8, ll. 16-19. However, contrary to Plaintiffs' assertions, the language in the specification does no more to clarify the claim term then the claim itself. First of all, the language "generally" is no more definite then "partially," in fact it is probably less clear. Secondly, limitations will not be imported into the claim from the specification or elsewhere, unless there is clearly an intent to disavow part of what would otherwise be claimed. *See Innova/Pure Water, Inc. v. Sarari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004).

Because the ordinary and customary meaning of "partially" is not clear from the claim language, claim context, or the specification, the Court looks to extrinsic evidence. *See Vitronics* at 1582 ("the court has numerous sources that it may properly utilize for guidance . . . and include both intrinsic evidence . . . and extrinsic evidence . . . ."). Courts may refer to extrinsic evidence if they deem it useful in determining a claim term's true meaning. *See Phillips* at 1317 (citing *Markman*, 52 F.3d at 980). Because extrinsic evidence may provide numerous problems of its own, including the fact that "each party will naturally choose the pieces of extrinsic evidence most favorable to is cause," the Court

finds it appropriate, as did Defendants, to take a survey of extrinsic dictionaries rather than selecting a construction that fits preconceived beliefs. *Phillips* at 1318 (referring to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993)(citation omitted)); (Doc. 29-1 at 4).

The first source describes "partially" as "to some extent." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1646, def. 1 (2002). This would tend to support Plaintiffs' construction of the term in question. However, "partially" derives from "partial," which has numerous definitions. The first definition is inapposite because it is describing bias, as does definition 2. *Id*. The third definition is the one pertinent to it's use in the claim in question. It defines "partial" as "of, involving, or affecting a part rather than the whole of something: not total or entire: not general or universal: existing to a limited extent only: INCOMPLETE . . . ." *Id* at def. 3. This clearly supports Defendants' position claiming that partially means incomplete or less than totally.

The second source defines partially as "[t]o a degree; not totally," and partial as "[o]f, relating to, being, or affecting only a part; not total; incomplete . . . ." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1281 (4th ed. 2000). The third source defines partially as "[i]n a partial way or degree, as opposed to totally; to some extent; in part; incompletely, restrictedly; partly," and partial as "[p]ertaining to or involving a part (not the whole); 'subsisting only in a part; not general or universal; not total' (J.); constituting a part only; incomplete." THE OXFORD ENGLISH DICTIONARY 267, def. 2.a. (2d ed. 1989); *Id* at 265, def. 2.a.

Because the Court finds little help in the claim language to sufficiently support any construction of the term, nor is clarification possible with the descriptions in the

specification, the Court relies on the extrinsic evidence above.  The extrinsic evidence makes one thing clear; the term partially does not include anything wholly or completely. Logically, if partially does not include anything that is completely covered, it should also not include anything that completely lacks coverage.  Neither the intrinsic nor the extrinsic evidence supports this logic and therefore the Court construes the term only as supported by the evidence, which is that "partially hidden from view" means hidden from view to some extent but not totally hidden from view.

### 2. "Exposed for View"

Defendants construe the term as "open for view; unconcealed."  (Doc. 26 at 10). Plaintiffs construe "exposed for view" to mean "positioned so that, but for the protective panel, at least some of the bottom can be seen."  (Doc. 28-1 at 9).  The difference in construction centers on the method of construction.  The very literal view by Defendants is contested by Plaintiffs' construction, which considers the phrase in context, including the entire written description.

Defendants argue that the claim term, read in context with the rest of the claim, potentially renders the claim invalid for indefiniteness, against the requirement of 35 U.S.C. § 112, para. 2.  (Doc. 26 at 10).  Defendants argue that the bottom surface is described as both "exposed for view" and "covered."  *Id.*  Alternatively, Defendants argue that if it is not indefinite, Plaintiffs' construction does not reflect the term's ordinary meaning and violates the canons of claim construction.  *Id* at 11.  Both of these arguments are contrasted by the assumption that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term

11

appears, but in the context of the entire patent . . . ." *Phillips* at 1313. Defendants'
alternative construction would have to be read in a vacuum to be viable, however, claims
do not stand alone, nor do individual claim terms. *See Phillips* at 1315 ("Rather, they are
part of 'a fully integrated written instrument.'") (citing *Markman*, 52 F.3d at 978).
Interpreted in context with the whole claim, as well as the specification, the patentee makes
clear that this otherwise exposed surface is covered by the panels.

 With reference to the indefinite claim, 35 U.S.C. § 112, para. 2 guides the analysis
and mandates the patentee point out particularly and distinctly what is claimed, to ensure
it sufficiently notifies the public of the scope of the patent. *Honeywell Int'l, Inc., v. Int'l
Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003) (citing *S3 Inc. v. NVIDIA Corp.*, 259
F.3d 1364, 1371-72 (Fed. Cir. 2001) (citation omitted)). "It requires 'that the claims be
amenable to construction, however difficult that task may be.'" *Id* (citing *Exxon Research*,
265 F.3d at 1375). Admittedly, it is no simple task reconciling the claims in this case, but
it rarely is. It is possible to harmonize the explanation of the bottom surface section being
both exposed for view and covered. For instance, in the context of the claim itself, the
patentee is explaining the invention in a step-wise fashion and referring to how the bottom
surface is positioned prior to the cap being attached. '928 Patent, col. 16, ll. 58-64. Other
explanations may exist as well. For example, the cap may not necessarily be opaque. The
bottom surface would be covered and "exposed for view," while still providing protection
from vandalism.

 It is not likely that this drafting would confuse someone skilled in the art nor, like in
*Honeywell*, make competitors incapable of understanding the metes and bounds of the

invention. 341 F.3d at 1341. The panels are repeatedly described as "removable" and it is fairly clear from the claim itself and the written description as a whole that what is claimed is a baby changing station with a removable panel that covers an otherwise exposed bottom surface. *See* ''928 Patent, Abstract; *Id* FIGS. 6, 7A, 7B, 8, 9, 10; *Id* at col. 4, l. 4; *Id* at col. 12, ll. 51-54; *Id* at col. 13, ll. 26-28. The summary of the invention also distinguishes that this invention has a panel that covers the otherwise exposed surface. *Id* at col. 4, ll. 51-57.

The claim here must describe either that the bottom surface is exposed or covered or else it very well may be indefinite. In the context of all of the intrinsic evidence, it would be clear to someone skilled in the relevant art that the bottom surface is exposed for view until it is covered by the protective cap. It is not exposed and covered at the same time. Only an extremely narrow, literal reading of the claim term, without guidance of the rest of the written description, would lead to that result. For the foregoing reasons, the Court adopts Plaintiffs' construction as the correct interpretation of this claim term and thus "exposed for view" is "positioned so that, but for the protective panel," the bottom surface can be seen. (Doc. 28-1 at 9).

### 3. "Abrasion-Resistant Material"

Defendants construe the term as "material that is able to withstand or inhibit the effects of scratching or wear." (Doc. 26 at 12). Plaintiffs construe the term as "a material that is resistant to scratching or wear." (Doc. 28-1 at 10). Plaintiffs later recognized that their construction used one of the very terms in question to define the term and revised their definition to "a material that protects against scratching or wear." (Doc. 30-1 at 6).

13

Both parties agree that, in the context of this Patent, "abrasion" means scratching or wear and the Court accepts that interpretation. Thus, the Court needs to construe the term "resistant" which Defendants construe as "able to withstand or inhibit" and Plaintiffs construe as "protects against." (Doc. 26 at 12); (Doc. 30-1 at 6).

In support of Defendants' construction, they cite "common parlance," and no authority. (Doc. 26 at 12). Later, in response to Plaintiffs' construction, Defendants maintain that extrinsic evidence is unnecessary, but claim that if it is, they have taken a survey of numerous sources which ultimately support their already proffered construction. (Doc. 29-1 at 8). Defendants are correct that the patentee did not act as his own lexicographer and the term is presumed to carry its ordinary and customary meaning. *See Phillips* at 1312. The claim language and the context do not shed light on any particular meaning to the term. '928 Patent, col. 16, l. 66. The specification is no more revealing than the claim language but reference to the prosecution history that is provided is helpful.

A Patent's prosecution history is part of the intrinsic evidence, which is deemed more reliable than extrinsic evidence, and should be considered if it is in evidence. *See Phillips* at 1317. Both parties reference the prosecution history and claim it supports their position. (Doc. 26 at 10); (Doc. 29-1 at 8). The relevant language is precisely clarifying what "abrasian-resistant" is and states that it is to "reduce vandalism by reducing the effects of graffiti and abrasions on the platform." JA at 382. The language does not say that it will eliminate or withstand all efforts to mar the panel, only that it's purpose is to "reduce" the effects of attempts to do so. *Id.*

For additional clarity, the Court turns to extrinsic sources, although it is generally

14

viewed as less reliable than even the prosecution history. *See Phillips* at 1318 ("the court has observed that dictionaries and treatises can be useful in claim construction") (referring to *Renishaw*, 158 F.3d at 1250). Here, the Court conducted a survey of extrinsic sources, just as Defendants previously encouraged and the Court did for the term "partially." All definitions of resistant lead back to resist. In the first source, resist is defined as "to withstand the force or the effect of: be able to repel or ward off . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1932, def. 1 (2002). This tends to support Defendants' construction, however, definition 2 defines resist as "something . . . that resists or prevents a particular action . . . ," which tends to support Plaintiffs' construction. *Id.*

The second source defines resist as "1. [t]o strive to fend off or offset the actions, effects, or force of. 2. [t]o remain firm against the actions, effects, or force of; withstand . . . ." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1484 (4th ed. 2000). The same problem exists here as in the former source; the first definition supports Plaintiffs construction but the second definition supports Defendants construction.

The third source defines resist as "Of things: To stop or hinder (a moving body); to succeed in standing against; to prevent (a weapon, etc.) from piercing or penetrating." THE OXFORD ENGLISH DICTIONARY 716, def. 1 (2d ed. 1989). This definition also could support either Plaintiffs' or Defendants' construction and does not clearly select between the two.

Because the intrinsic evidence supports Plaintiffs' construction and intrinsic evidence is seen as more reliable than extrinsic evidence (which was inconclusive here anyhow), the Court largely adopts Plaintiffs' construction. In the context of this Patent and this action, an abrasian-resistant material is "a material that protects against scratching or

15

wear" and protects, as defined in the prosecution history means "reducing the effects of . . . ." (Doc. 30-1 at 6); JA at 382.  Alltogether, the Court's definition of "abrasian-resistance material" is a material that reduces the effects of scratching or wear.

### 4. "Covers the Exposed Bottom Surface"

Defendants argue again that this claim term in combination with the prior term "exposed for view" renders the claim, and therefore the patent, void as indefinite.  (Doc. 26 at 13).  As already discussed *supra* at Section V.A.2., the Court does not deem the claim or patent void for indefiniteness.  Alternatively, Defendants construe the term as "concealing the exposed bottom surface."  *Id.*  Plaintiffs construe the term as "overlying the exposed bottom surface."  (Doc. 28-1 at 11).  Naturally, one definition is narrow and the other fairly broad.

Defendants argue that Plaintiffs' construction is wrong because they seek to define the claim term with a word that was used elsewhere in the claim, and different words used in a claim are presumed to have different and distinct meanings.  (Doc. 26 at 14).  In support of this rationale, Defendants state that because the Federal Circuit instructs that claim terms are *generally* used consistently throughout the patent, that different words somehow cannot mean the same or similar thing.  *Id.* (emphasis added).  Although there is a presumption that different words used in patent claims do carry distinct meanings, it is only a presumption and a presumption may be overcome.  *Innova/Pure Water, Inc. v. Sarari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1120 (Fed. Cir. 2004) (citing *Bancorp Servs.*, 359 F.3d at 1373) (noting that "this is simply a case where the patentee used different words to express similar concepts, even though it may be confusing drafting

practice."). In contrast to *Innova*, because the patentee here used different words in the same sentence of the claim to describe attributes of the protective panel structure, and because "it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms," the presumption is not overcome and the use of different terms strongly suggests that "overlies" and "covers" mean two different things. *Id* at 1119.

In addition to claiming that "covers" cannot mean "overlying," Defendants claim that the term should carry its ordinary meaning that it is presumed at law to have, and that the meaning is ascertainable by reference to the patent's disclosed embodiments. (Doc. 26 at 14). Here, Defendants try to restrict the claim term to its disclosed embodiment and therefore do not recognize that the Federal Circuit "expressly reject[s] the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment," and also that "a court will give a claim term the full range of its ordinary meaning . . . ," and not a restricted interpretation. *Phillips* at 1323; Honeywell *Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003) (citation omitted).

Finally, Defendants offer several extrinsic definitions to support their construction that cover means conceal. (Doc. 29-1 at 10). In each and every definition provided, conceal is used to describe cover, but always as an alternative or illustration depicted by "or," and never as the only definition or imperative. *Id.* ("for protection or *concealment*," "to protect or *conceal*," "*conceal*, protect, or enclose."). All of these extrinsic sources read in their entirety could support Plaintiffs construction as well. Defendants quote a line from

17

*Phillips* that is precisely on point in the determination of this claim term. (Doc. 26 at 13-14) (citing *Phillips* at 1314) ("the ordinary meaning of claim language as understood by a person of ordinary skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."). Here, in the context of the patent, the claim language, written description, and extrinsic sources, it is clear that the term carries it's ordinary and common meaning. To cover may include concealing but it does not necessarily have to. It is possible to cover something and not conceal it. Niether the claim language nor the context say or infer that covering is "concealing" or opaqueness or anything to that effect. Plaintiffs are correct that Defendants' interpretation is too narrow and would contradict the plain language of the claim. (Doc. 30-1 at 7). Plaintiffs are also correct that nothing in evidence requires the protective panel to fully conceal the bottom surface of the support platform. *Id* at 8.

While the patentee's use of different words to describe the panel suggests that the terms mean different things, there is nothing in the intrinsic evidence or extrinsic defintions that conclusively reveal that they actually do mean different things. Further, all of the extrinsic definitions offered provide meanings consistent with both terms meaning the same thing. (Doc. 29-1 at 10) ("'to place something over or upon . . . [t]o place something upon or over . . . [p]ut or lay something over or in front of . . .'"). Keeping in mind that courts should give terms the full extent of their meaning, "cover" simply means to place something over and nothing more. This means the same thing as overlying and is therefore somewhat confusing and imprecise drafting, but not so much so that someone skilled in the art would be confused. The only limitation coming from the claim is that it must "at

18

least" cover or overlay a portion of the bottom surface.  '928 Patent, col. 17, l. 1. The "at least" language here means that it must cover or overlay a portion of the surface up to and including total coverage.  The Court construes the term "covers the exposed bottom surface" as placing the protective panel over at least a portion of the bottom surface.

### 5. "Vandalism Proof"

Defendants construe the term as "invulnerable to willful destruction or marring." (Doc. 26 at 15).  Plaintiffs construe the term as "able to resist, repel, or minimize."  (Doc. 28-1 at 11).  The argument centers on whether the claim term carries is ordinary and customary meaning or whether it is adequately described and defined within the intrinsic evidence.

Defendants argue that the term only needs to be ascribed it's ordinary meaning and that Plaintiffs fail to do this, and instead try to revise the language to lower the threshold of the term, making it synonymous with "resistant."  (Doc. 26 at 15).  Plaintiffs counter that "proof" is well defined in the claim and is defined as being able to resist vandalism, not invulnerable to it.  (Doc. 28-1 at 11).  In Defendants' response to Plaintiffs' construction, Defendants repeat that "proof" simply cannot mean "resist" because they already used the word "resistant" elsewhere in the claim.  (Doc. 29-1 at 11).  Defendants also claim that a person of skill in the art would recognize "proof" as having a higher standard of protection. *Id.*  Lastly, Defendants offer several extrinsic definitions of "proof" to show that it means more than resist and is more akin to being invulnerable.  *Id.*

Defendants are correct that "proof" in its ordinary and customary sense has a very high standard of protection approaching invulnerability.  The extrinsic sources cited support

that conclusion as do the extrinsic sources the Court reviewed. (Doc. 29-1 at 11-12); *See* THE OXFORD ENGLISH DICTIONARY 629, def. 1 (2d ed. 1989) ("Of tried strength or quality . . . impenetrable, impervious, invulnerable."); THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1404, def. *adj.* 1 (4th ed. 2000) ("Fully or successfully resistant; impervious."). Of larger importance, however, is that when intrinsic evidence resolves ambiguity, resort to extrinsic evidence is improper. *See Vitronics* at 1583; *Phillips* at 1318 ("We have viewed extrinsic evidence in general as less reliable . . . .").

A person skilled in the relevant art would generally understand the high threshold the term "proof" carries but would also understand that a patentee is his own lexicographer and may define terms anyway he/ she pleases. *See Phillips* at 1316 ("the inventor's lexicography governs."); *Vitronics* at 1582 ("Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning . . . ."); *Markman* at 980 ("the patentee is free to be his own lexicographer."). In order for a patentee to assign a unique meaning, he/ she must clearly define it in the specification. *Id.* This redefinition may be done through implication in the patent and does not necessarily have to be explicitly stated. *See Phillips* at 1320-1321 ("requiring that any definition of claim language in the specification be express, is inconsistent with our rulings that the specification is 'the single best guide to the meaning of a disputed term . . . .'"). Here, the patentee clearly defines the unique usage within the patent, as required.

The claim states that the protective panel creates a "vandalism proof support platform *for reducing the effects of graffiti and abrasions* . . . ." '928 Patent, col. 17, ll. 4-5

(emphasis added). The patentee clearly describes the parameters of "proof" as attempting to reduce graffiti, not eliminating vandalism forevermore. The entire written description also makes it abundantly clear that this invention is designed with replacement in mind, not invulnerability. *Id.* at ABSTRACT ("removable protective panels are positioned . . . to reduce vandalism damage."); *Id.* at col. 2, ll. 9-10 ("it is an objective of the invention to *reduce* . . . damage from vandalism . . . .") (emphasis added); *Id.* at col. 3, ll. 19-22 ("the inventive baby changing station . . . is less apt to be permanently defaced by graffiti and other vandalism . . . ."); *Id.* at col. 4, ll. 60-64 ("If defaced, the panel may be easily removed and replaced with a new panel thus eliminating the need to clean or replace the entire changing station when the exposed bottom surface is vandalized."). The invention is designed to accomodate the vulnerability and there are many examples throughout the written description showing that the panels are not impenetrable but are designed to be readily replaced when they are tarnished.

Plaintiffs are correct that the patentee did not intend to "eliminate" the effects of vandalism through his invention, only to reduce the effects of it, as he sufficiently defined throughout the written description. (Doc. 30-1 at 9). For the foregoing reasons, the Court accepts Plaintiffs' construction of the term. The Court construes "vandalism proof" as able to resist, repel, or minimize vandalism.

### 6. "Surrounding"

Defendants construe the term as "enclosing all edges of." (Doc. 26 at 16). Plaintiffs construe the term as "extending around the margin or edge of." (Doc. 28-1 at 12). The difference is in the degree of completeness that the structure "surrounds" the protective

21

panel.

Defendants argue that only intrinsic evidence is necessary here and point to embodiments and descriptions in the specification to support this view.  (Doc. 26 at 16).  Plaintiffs contend the claim term is not defined in the intrinsic evidence and it therefore carries it's ordinary and customary meaning.  (Doc. 28-1 at 11-12).  Plaintiffs offer a single definition from a dictionary to support their view.  *Id.*  In response, Defendants notice that another definition in Plaintiffs' source defines "surrounding" as "to enclose on all sides." (Doc. 29-1 at 12).  Defendants go on to provide a survey of several extrinsic sources to support their construction.  *Id* at 13.  Defendants finally argue that the doctrine of claim differentiation would force a construction that makes claim 6, where this term is located, different than all other claims.  *Id.*  They also claim that this forces claim 6 to be broader than claim 7, because claim 7 depends from claim 6.  *Id.*

Starting with the claim language and context, neither lead us to a clear answer.  The claim describes details of the protective cap but no more clarity regarding what "surrounding" means within this claim.  We next look to the specification, which Defendants are correct, show embodiments that completely enclose all edges of the protective panel. (Doc. 26 at 18); '928 Patent, col. 14, ll. 35-38.  Even so, the Federal Circuit has consistently prohibited limiting claims to embodiments depicted or described in the specification, even if there is only a single embodiment.  *Phillips* at 1323.  Limitation in this manner would only occur if the patentee clearly and unambiguously disavowed the scope or meaning.  *Innova/Pure Water, Inc. v. Sarari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1120 (Fed. Cir. 2004).  No support is offered from the prosecution history and

22

therefore ambiguity still exists after consulting all of the intrinsic evidence.

The Court next looked at several extrinsic sources. *See Phillips* at 1317-1318 ("the court has observed that dictionaries and treatises can be useful in claim constuction.") (citation omitted). In the first source, "surrounding" leads back to "surround," which is defined as "to cause to be encompassed, encircled, or enclosed with something . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 2302, def. 3 (2002).

In the second source, "surrounding" led to "surround," which is defined as "1. To extend on all sides of simultaneously; encircle. 2. To enclose or confine on all sides . . . ." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1743 (4th ed. 2000).

The final source defines "surround" as "[t]o enclose, encompass, or beset on all sides; to stand, lie, or be situated around . . . [t]o go or extend round (an object or body, a room, or the like); to encircle, as a frame, border, etc. . . . [t]o cause to be encircled or enclosed with something . . . ." THE OXFORD ENGLISH DICTIONARY 267, def. II.2.a., II.3, II.5. (2d ed. 1989). All of the extrinsic sources the Court referenced as well as the extrinsic sources both Plaintiffs and Defendants provided are unanimous that "surrounds" means to completely encircle, enclose, or extend around all sides.

Because the extrinsic sources are in harmony with the claim language and context, specification and embodiments, and prosecution history, the Court adopts Defendants' construction as the correct interpretation. "Surrounding" is "enclosing all edges of."

### 7. **"Configured to Engage the Platform and Secure the Panel to the Platform"**

Defendants construe the term as in means-plus-function format and ultimately

meaning "constructed to interlock with the platform and attach the panel to the platform." (Doc. 26 at 18). Alternatively, Defendants argue that even without means-plus-function interpretation, their definition should still be used because it is more consistent with the intrinsic evidence and plain meaning. *Id* at 22. Plaintiffs do not construe the term in means-plus-function language and construe the term as "designed to fit together with the platform and hold the panel to the platform." (Doc. 28-1 at 10). The difference in construction centers on whether the claim phrase is in means-plus-function language and subsequently restricted per 35 U.S.C. § 112, para. 6.

If a claim term is in means-plus-function format, "such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, para. 6. "Means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited functions." *Phillips* at 1311 (citation omitted). Use of the catch-phrase "means" creates a presumption that a claim term is in means-plus-function format and restricted to the description(s) in the specification and equivalents. *See Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1213-1214 (Fed. Cir. 1998). Conversely, lack of the term "means" creates a presumption that it is not in means-plus-function format, but both presumptions are rebuttable. *Id.* To avoid means-plus-function analysis, the claim term must have "a generally understood structural meaning in the art" or else recite sufficient structure. *Id* at 1213.

Defendants argue that even though the catch-phrase "means" is not used in this claim, the claim-phrase only recites a function and should therefore be construed as a

means-plus-function limitation subject to 35 U.S.C. § 112, para. 6. (Doc. 26 at 18). Defendants further argue that the limitation only recites the functions "engage" and "secure," neither of which have a reasonably well understood structure in the art. *Id* at 19. Recognizing that the claim is describing the protective cap, Defendants argue that a protective cap also fails to recite sufficient structure to overcome means-plus-function analysis. *Id.* Consequently, Defendants urge the Court to restrict the claim to the structures disclosed in the specification and their equivalents. *Id* at 20. Defendants construe the term as restricted to its disclosed embodiment, which uses a structure described and depicted as a peripheral lip, and equivalent structures. *Id* at 21. Alternatively, Defendants argue that if the Court does not deem the claim term in means-plus-function language, the same definition should apply. (Doc. 26 at 22).

Plaintiffs argue that the intrinsic evidence does not adequately define the terms, all relevant terms in question merely describe the protective cap structure - thus are not means-plus-function terms, and the terms therefore carry their ordinary and customary meaning. (Doc. 28-1 at 12). The terms Plaintiffs focus on are "configured," "engage," and "secure." *Id.* Through a string of extrinsic definitions, Plaintiffs come to the conclusion that "configured" means "designed," "engage" means "to fit or work together properly" and that "secure" means "hold." *Id.* Defendants appear to accept the construction that "secure" means "hold." (Doc. 26 at 22).

Defendants claim that Plaintiffs' construction of the terms ignores intrinsic evidence and "cherry picks" extrinsic sources. (Doc. 29-1 at 15). Defendants further argue that Plaintiffs' own sources, as well as a broad survey of other extrinsic sources, recite that

25

"engage" means "to interlock." *Id* at 15-16. Using the same rationale, Defendants conclude that "secure" means "attach." *Id.* In response, Plaintiffs argue that the structure in the claim is the protective cap structure and the claim phrase at question here is only a description of how that structure interracts with the rest of the invention. (Doc. 30-1 at 11). By describing the cap, something Plaintiffs contend has sufficient structure, Plaintiffs assert that the claim phrase in question here is not subject to means-plus-function analysis. *Id.* Plaintiffs also contend that Defendants' construction is not supported intrinsically and is a selection of overly restrictive, extrinsic definitions. *Id* at 12.

The Court agrees with Plaintiffs in that the claim phrase is not in means-plus-function format. First, the terms do not use the magic word "means" and this creates a strong presumption that it is not in means-plus-function format. *Phillips* at 1311 ("the absence of that term creates a rebuttable presumption that section 112, paragraph 6, does not apply.") (citation omitted). The presumption is not overcome because the claim itself adequately recites sufficient structure and the structure has a reasonably well understood meaning to someone skilled in the art. The structure pertinent to this claim phrase is the protective cap structure. The claim describes the cap structure as "protective," "surrounding the protective panel," and "configured to engage the platform and secure the panel to the platform." '928 Patent, col. 17, ll. 29-32. Even if the term "cap" were in question, the description in the claim defines the structure very well so that one skilled in the art would understand what the subject matter is and how to reproduce it. If "cap" were not described as well as it is here, it is still feasible that someone skilled in the art would understand what the structure is because the term itself connotes structure. Because this

claim is not in means-plus-function format, the limitations will not be limited to those disclosed in the specification but will cary their full range, as deduced from the intrinsic and extrinsic evidence.

Plaintiffs are also correct that the operative terms that need construing are "configured," "engage," and "secure."  (Doc. 28-1 at 12).  It is also accurate that none of the terms are defined by intrinsic sources.  Taking a survey of extrinsic sources, the first source reveals that "configure" means "to shape according to some model: cause to conform . . . to arrange in a certain form, figure or shape: give a configuration to: shape." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 476 (2002).  The second source defines "configure" as "[t]o fashion according to something else as a model: to conform in figure or fashion . . . [t]o fashion by combination and arrangement . . . ."  THE OXFORD ENGLISH DICTIONARY 708, def. 1, 3 (2d ed. 1989).  The third source defines the term configure as "[t]o design, arrange, set up, or shape with a view to specific applications or uses . . . ."  THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 386 (4th ed. 2000).

Defendants claim that "configure" means "constructed," while Plaintiffs construe the term to mean "designed."   Neither construction is that dissimilar but Defendants' construction is more limited, carrying a connotation of assembling.  Plaintiffs' interpretation is more in line with the theory that claim terms should be given the full range of their meaning and is also more in harmony with the extrinsic sources referenced.  *See Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003) ("a court will give a claim term the full range of its ordinary meaning as understood by persons skilled in the relevant art.") (citation omitted).  The Court construes "configured" as

27

"designed."

A survey of "engage" first shows "*of machinery*: to be or become in gear . . . interlock and interact . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 751, def. 5 (2002). The second source defines "engage" as "[t]o cause to be held fast . . . of a portion of machinery, as a cog-wheel, etc.: To interlock with, fit into a corresponding part." THE OXFORD ENGLISH DICTIONARY 247, def. III., 11.c. (2d ed. 1989). The third source defines the term engage as "[t]o interlock or cause to interlock; mesh . . . [t]o become meshed or interlocked . . . ." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 592 (4th ed. 2000). The full range of the term includes both meshed and interlocked, however; these are alternatives not imperatives. Further, Defendants' "interlocked" is the most restrictive of all of the definitions. Plaintiffs' construction is fairly broad but it is described in several of the definitions and encompasses all of the illustrations, or the "full range" of the term's meaning. The Court adopts Plaintiffs' construction and for purposes of this order, "engaged" means "fits together."

A survey of "secure" first reveals "to make fast: tie down: seal . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 2053, def. 4b (2002). The second source defines "secure" as "[t]o make fast or firm." THE OXFORD ENGLISH DICTIONARY 853, def. 5.a. (2d ed. 1989). The third source defines the term secure as "[t]o make firm or tight; fasten . . . ." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1575 (4th ed. 2000). All of the sources include fastening or to "make fast," which is a nautical term for fastening. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1364 (2002). Defendants' construction equating "secure" with "attach" is closer to the common meaning, but the Court adopts the

28

unanimous definition derived from multiple extrinsic sources as the proper construction. For purposes of this action, "secure" means "fasten."

Combining the foregoing analysis into a single construction, the claim phrase in question "configured to engage the platform and secure the panel to the platform" is construed as "designed to fit together with the platform and fasten the panel to the platform."

**VI.**   **CONCLUSION**

The Court concludes that the foregoing claims constructions control.  The parties shall, therefore, proceed in a manner consistent with the conclusion of this Decision and Order.

**IT IS SO ORDERED**.

s/Michael R. Barrett
MICHAEL R. BARRETT, Judge
United States District Court